UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MOUNGER CONSTRUCTION, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:11CV00081 ERW |
| ) | |
| FIBERVISION CABLE SERVICES, LLC, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on three motions to dismiss counts alleged in Plaintiff Mounger Construction, LLC's ("Plaintiff") First Amended Complaint: (1) Defendant Blue Bird Media, LLC, a/k/a Blue Bird Networks' ("Blue Bird") Motion to Dismiss Count V or, in the Alternative, for a More Definite Statement, [ECF No. 33]; (2) Defendant Advanced Communications USA, Inc., a/k/a Unitek Global Services, a/k/a Nexlink Communications' ("Nexlink") Motion to Dismiss Counts III and VI or, in the Alternative, for a More Definite Statement, [ECF No. 40]; and (3) Defendant Windstream Communications, Inc.'s ("Windstream") Motion to Dismiss Counts III and VI, [ECF No. 56].

**I.      PLAINTIFF'S COMPLAINT**

The statements that follow are allegations taken from Plaintiff's First Amended Complaint. [ECF No. 31]. The Court recites these allegations here for the sole purpose of providing context to the pending motions.

Windstream is the owner of construction job sites in Moran, Texas, and Macomb, Oklahoma. Pl.'s First Am. Compl. ¶ 13. Windstream hired Nexlink as the general contractor for these job sites. *Id.* ¶ 15. Nexlink then hired Fibervision as a subcontractor. *Id.* ¶ 12. In turn, Fibervision and

Plaintiff executed a contract on July 5, 2011, whereby Plaintiff agreed to work as a sub-subcontractor at these same job sites. *Id.* ¶ 10; *id.* Ex. A. Between July 13 and August 9, Plaintiff performed construction work at the Moran and Macomb job sites. *Id.* ¶ 11. Plaintiff submitted invoices for ths work to Fibervision totaling $100,687.34. *Id.* ¶ 16; *id.* Ex. B. Neither Fibervision, Nexlink, nor Windstream has made any payments to Plaintiff. *Id.* ¶ 16.

Blue Bird is the owner of a construction job site in Hannibal, Missouri. *Id.* ¶ 30. On August 1, 2011, Fibervision and Plaintiff executed an addendum to their previous contract, whereby Plaintiff agreed to also perform construction work at this Hannibal job site. *Id.* ¶¶ 18-19; *id.* Ex. C. At Fibervision's instruction, Plaintiff moved construction crews and equipment to Hannibal for the purpose of performing that work. *Id.* ¶ 20. On August 8, 2011, Plaintiff's crews and equipment appeared in Hannibal ready to begin work, but, contrary to Fibervision's representations, numerous problems with the job site prevented Plaintiff from commencing work. *Id.* ¶¶ 21-23. In an effort to resolve these problems, Plaintiff's representatives traveled to St. Louis, Missouri on August 10 to meet with Blue Bird and Nexlink. *Id.* ¶ 24. At that meeting, a Blue Bird representative directed Plaintiff to begin work. *Id.* ¶ 26. On August 12, that same representative once again directed Plaintiff to begin work, confirming that certain signage required at the job site would be provided in the near future. *Id.* ¶ 27. Because Plaintiff was unable to begin work on August 8, it incurred substantial shut-down costs. *Id.* ¶ 28.

In its First Amended Complaint, Plaintiff asserts various claims for relief which are relevant here. Plaintiffs alleges Blue Bird is liable for negligent misrepresentation (Count V, *id.* ¶¶ 62-72). Plaintiff alleges Nexlink is liable under a theory of quantum meruit (Count III, *id.* ¶¶ 47-53) and the Texas Prompt Pay Act (Count VI, *id.* ¶¶ 73-79). Plaintiff alleges Windstream is liable under a theory

2

of quantum meruit (Count III, *id.* ¶¶ 47-53) and the Texas Prompt Pay Act (Count VI, *id.* ¶¶ 73-79). Now pending before the Court are motions to dismiss these claims.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) sets forth the general rule of pleading. Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This statement "must provide fair notice of the plaintiff's claim and grounds for relief." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). In contrast, Rule 9(b) contains a "heightened pleading standard[.]" *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). Under Rule 9(b), when a complaint alleges "fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "In other words, the complaint must plead the 'who, what, where, when, and how[.]'" *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citation omitted).

A party may move under Rule 12(b)(6) to dismiss a complaint for "fail[ing] to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test "the sufficiency of a complaint[.]" *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010). A court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, the United States Supreme Court has suggested a two-step inquiry for resolving Rule 12(b)(6) motions. *Id.* at 679. First, a court determines which of the complaint's allegations contain "factual

3

matter, accepted as true[.]" *Id.* at 678. Though "a court must accept as true all of the allegations contained in a complaint[,]" a court may disregard conclusory statements, legal conclusions, and threadbare recitals of the elements of a cause of action. *Id.* at 678-679. Second, when a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The allegations do not need to show there is a probability the plaintiff is entitled to relief, but they must show that relief is more than a mere possibility. *Id.* at 678. A court makes this determination by drawing on its judicial experience and common sense while evaluating the complaint as a whole. *Id.* at 679.

In the alternative, a party may move under Rule 12(e) for a more definite statement of any complaint "which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "A motion for more definite statement is proper when a party is unable to determine issues he must meet, or where there is a major ambiguity or omission in the complaint that renders it unanswerable." *Love v. Career Educ. Corp.*, No. 4:11CV1585 JAR, 2012 WL 10614, at *1 (E.D. Mo. Jan. 3, 2012).

## III. LEGAL ANALYSIS

Defendants Blue Bird, Nexlink, and Windstream have each moved to dismiss Plaintiff's claims. The Court will take up each of these motions, in turn.

### A. Blue Bird's Motion to Dismiss Count V

In Count V, Plaintiff alleges Blue Bird is liable for negligent misrepresentation. Under Missouri law, a cause of action for negligent misrepresentation has the following elements:

> (1) the representation is false; (2) the representation is material; (3) the speaker knows of the representation's falsity; (4) the speaker intends the hearer to act on the representation "in the manner reasonably contemplated"; (5) the hearer is ignorant of the representation's falsity; (6) the hearer relies on the representation's truth; (7) the hearer has a right to rely on the representation; and (8) the hearer is consequently and proximately injured.

4

*Cordy v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1111 (8th Cir. 2006) (citing *Joel Bianco Kawasaki Plus, Inc. v. Meramec Valley Bank*, 81 S.W.3d 899, 904 (Mo. Ct. App. 2001). "Negligent misrepresentation differs [from fraudulent misrepresentation] primarily in that the speaker must only fail to exercise reasonable care or competence in obtaining or communicating [the] information, rather than know of its falsity." *Id.* (quoting *M&H Enters v. Tri-State Delta Chems., Inc.*, 35 S.W.3d 899, 904 (Mo. Ct. App. 2001) (some alterations).

The parties dispute whether a claim for negligent misrepresentation must comply with the general pleading requirement of Rule 8(a) or the heightened pleading requirement of Rule 9(b). The Court notes that the federal district courts of this state have differed on this issue.[1] The Court therefore looks to the Eighth Circuit for guidance on this issue. Eighth Circuit case law states "that federal courts may not apply the heightened pleading standard of Rule 9(b) outside the two specific instances-fraud and mistake-explicitly found in the Rule." *In re NationsMart Corp. Secs. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997). Accordingly, the Court holds that Plaintiff's negligent misrepresentation claim must comply only with Rule 8(a)'s general pleading requirement. Though the allegations in Count V of negligent representation do not contain an abundance of factual content, the Court finds them to be sufficient to comply with pleading requirements of Rule 8(a).

Blue Bird next argues Plaintiff has failed to state a claim for negligent misrepresentation because the statements identified in Plaintiff's complaint concern only the speaker's future intent.

---

[1] *Compare First Franklin Fin. Corp. v. Advantage Mortg. Consulting, Inc.*, No. 4:07CV1478 JCH, 2007 WL 4454292, at *5 (E.D. Mo. Dec. 14, 2007) ("The particularity requirements of Rule 9(b) do not apply to a claim of negligent misrepresentation.") *and In re Marion Merrell Dow, Inc.*, No. 92-0609-CV-W-6, 1993 WL 393810, at *12-13 (W.D. Mo. Oct. 19, 1993) ("To apply the Rule 9(b) particularity requirements to a claim of negligent misrepresentation appears contrary to the plain language of Rule 9(b).") *with In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F.Supp. 897, 904 n.3 (W.D. Mo. 2009) ("The Court rejects Plaintiffs' intimation that Rule 9(b) does not apply to claims of negligent misrepresentation.").

Under Missouri law, "[a] negligent misrepresentation claim cannot arise from a statement regarding the speaker's future intent." *City of St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 478 (8th Cir. 2006) (citation omitted). This is because "[i]t is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions." *Id.* (citation omitted). Thus, "a claim for negligent misrepresentation generally cannot be based on unfulfilled promises or statements as to future events." *Id.* (quotation omitted). However, if a "statement is a representation of the speaker's present intention or concerns matters within the speaker's control, a cause of action for negligent misrepresentation exists." *Id.* (quotation omitted).

Upon viewing the Complaint's factual allegations in the light most favorable to Plaintiff, the Court finds Blue Bird's argument to be without merit. In paragraph 64, Plaintiff alleges that "on August 10, 2011, "Blue Bird ... represented that Mounger Construction could begin work in Hannibal." Pl.'s First. Am. Compl. ¶ 64. The misrepresentation alleged is Blue Bird's statement Plaintiff could begin work in Hannibal. This is a statement directed towards Plaintiff, and thus it does not concern the speaker's future intentions. In paragraph 65, Plaintiff alleges a Blue Bird agent "again represented and confirmed on August 12, 2011, that Mounger Construction could begin work in Hannibal once the required signage which they were procuring was available on the site, within one week's time." *Id.* ¶ 65. The alleged misrepresentation is Blue Bird's statement it was procuring signage. This statement suggests both that Blue Bird had the present intention to procure signage and that doing so was a matter within Blue Bird's control. The Court therefore finds Plaintiff has not failed to state a claim for negligent misrepresentation.

In the alternative, Blue Bird requests that the Court order Plaintiff to provide a more definite statement. The Court finds Plaintiff's factual allegations are not so "vague or ambitious" that Blue Bird is unable to prepare a response. In addition, Blue Bird will have ample opportunity during the

6

discovery process to learn the details of Plaintiff's negligence allegation. *Century '21' Shows v. Owens*, 400 F.2d 603, 607 (8th Cir. 1968). The Court will deny Blue Bird's Rule 12(e) request for a more definite statement. Accordingly, the Court will deny Blue Bird's Motion to Dismiss.

### B. Nexlink's Motion to Dismiss Counts III and VI

In Count III, Plaintiff alleges Nexlink is liable under a theory of quantum meruit. Plaintiff alleges that Nexlink was the general contractor at the Moran and Macomb job sites, that Nexlink hired Fibevision as a subcontractor, and that Fibervision in turn hired Plaintiff as a sub-subcontractor. Plaintiff alleges the construction work it completed has unjustly enriched Nexlink.

"Quantum meruit is a remedy for the enforcement of a quasi-contractual obligation and is based primarily on the principle of unjust enrichment." *Int'l Paper Co. v. Futhey*, 788 S.W.2d 303, 306 (Mo. Ct. App. 1990). Under Missouri law, the "essential elements" of an action for quantum meruit are:

> (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable.

*Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261, 264 (Mo. Ct. App. 1984). The most important element is that "the enrichment to the defendant be unjust[.]" *Id.*

"Unjust enrichment occurs where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust." *Id.* In the context of construction projects, "a landowner's retention of the benefit from improvement to his property by materials supplied by a subcontractor without paying the reasonable value thereof, is inequitable[.]" *Int'l Paper Co.*, 788 S.W.2d at 306. As a result, "the mere absence of privity will not defeat the subcontractor's right to recover the reasonable value of such materials." *Id.* "However, where the landowner has paid a general contractor for the materials by paying the contract price, he

7

is not unjustly enriched because he has paid for what he received. Even though the subcontractor remains unpaid and thus suffers detriment, equity will not require the owner to pay twice." *Id.* "Therefore, it has been consistently held that non-payment by the owner is an essential element which must be pleaded and proved by a subcontractor seeking to establish a cause of action for quantum meruit." *Id.*

Nexlink argues the same rule should apply here, in that it is no less inequitable to require a general contractor to pay twice for the same construction work.  Plaintiff responds by arguing that the rule, by its very terms, applies only when a subcontractor seeks recovery from a landowner.  The Court finds the rule discussed above is not limited to subcontractors and landowners.  Instead, that rule is premised upon the inequity of requiring a party to pay twice for a single benefit received.  *Id.* Therefore, to state a claim for quantum meruit, Plaintiff must plead non-payment by Nexlink.

Plaintiff's Complaint contains the following allegation: "Upon information and belief, Nexlink has not paid Fibervision the funds required by their contract." Pl.'s First. Am. Compl. ¶ 14.  Plaintiff makes no additional factual allegations concerning Nexlink's failure to pay Fibervision.  Moreover, the remainder of the allegations of Count III are similarly devoid of factual content.  *Id.* ¶¶ 47-53. These allegations are insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted); *see also U.S. Bank Nat. Ass'n v. Parker*, No. 4:09CV1755 HEA, 2010 WL 2735661, at *3-4 (E.D. Mo. July 9, 2010) (dismissing claims containing factual allegations based upon plaintiff's mere "information and belief").

Plaintiff's claim for quantum meruit also fails for a second and independent reason.  In an action for quantum meruit, a party is held liable to an implied or qausi-contract in order to remedy the unjust enrichment that would otherwise result. *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261,

8

264 (Mo. Ct. App. 1984). However, "[w]here there is an express contract, the law will not imply a contract. Thus, plaintiff cannot recover on a theory of quantum meruit where there is an applicable contract." *Skillington v. Activant Solutions, Inc.*, No. 4:09CV673MLM, 2009 WL 1588280, at *7 (E.D. Mo. June 5, 2009). In the Complaint, Plaintiff states it performed construction work pursuant to a contract with Fibervision. Pl.'s First. Am. Compl. ¶ 10. In addition, Plaintiff has attached those contractual documents as an exhibit to the Complaint. Pl.'s First. Am. Compl. Ex. A-C.

Upon reviewing Plaintiff's allegations and these documents, the Court finds the contract between Plaintiff and Fibervision governs the work completed. Fed. R. Civ. P. 10(c); *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) ("[M]aterials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint."). As a result, Plaintiff cannot recover on a theory of quantum meruit. Plaintiff's attempt to avoid this conclusion by referencing various Defendants' Answers is misplaced, because the object of inquiry when resolving a motion to dismiss is the legal sufficiency of a complaint. *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010). Therefore, Plaintiff's claim for quantum meruit against Nexlink fails to state a claim for which relief can be granted.

Next, in Count VI, Plaintiff alleges Nexlink violated the Texas Prompt Pay Act. In relevant part, this Act provides as follows:

> (a) If an owner or a person authorized to act on behalf of the owner receives a written payment request from a contractor for an amount that is allowed to the contractor under the contract for properly performed work or suitably stored or specially fabricated materials, the owner shall pay the amount to the contractor, ....
>
> (b) A contractor who receives a payment under Subsection (a) or otherwise from an owner in connection with a contract to improve real property shall pay each of its subcontractors the portion of the owner's payment, including interest, if any, that is attributable to work properly performed or materials suitably stored or specially fabricated as provided under the contract by that subcontractor, to the extent of that subcontractor's interest in the owner's payment. ...

9

> (c) A subcontractor who receives a payment under Subsection (b) or otherwise from a contractor in connection with a contract to improve real property shall pay each of its subcontractors the portion of the payment, including interest, if any, that is attributable to work properly performed or materials suitably stored or specially fabricated as provided under the contract by that subcontractor, to the extent of that subcontractor's interest in the payment.

Tex. Prop. Code Ann. § 28.002. The Act defines "contractor" as "a person who contracts with an owner to improve real property or perform construction services for an owner." *Id.* § 28.001(1). This Act therefore sets out a sequential chain of payment obligations. *Taylor Pipeline Const., Inc. v. Directional Road Boring, Inc.*, 438 F. Supp. 2d 696, 716-17 (E.D. Tex. 2006). First, if a landowner receives a written payment request from a contractor, then that landowner is required to pay the amount owed to the contractor. Tex. Prop. Code Ann. § 28.002(a). Next, a contractor who receives payment from a landowner must, in turn, make payment to each of its subcontractors. *Id.* § 28.002(b). Finally, that subcontractor must make payment to any subcontractors it employed. *Id.* § 28.002(c). Therefore, the Act requires a general contractor to pay only its subcontractors, and it has no duty to pay any parties a subcontractor may have hired. *Id.* § 28.002(b)-(c); *Taylor Pipeline Constr., Inc.*, 438 F. Supp. 2d at 717 ("[T]he Prompt Pay Act does not contain provisions directing the timely payment of funds from a contractor to a sub-subcontractor[.]").

In light of this statutory scheme, Plaintiff's claim against Nexlink fails to state a claim for which relief can be granted. Plaintiff's complaint alleges Nexlink was the project's general contractor. Pl.'s First. Am. Compl. ¶ 10. As a result, Nexlink's sole obligation under the Act was to pay its subcontractor, FiberVision; the Act does not require Nexlink to also pay Plaintiff, a subcontractor of FiberVision. In addition, Nexlink's obligation to make payments arises only after it itself has received payment. As discussed above, Plaintiff's Complaint contains no allegation that Nexlink received payment from Windstream; to the contrary, Plaintiff alleges just the opposite. Pl.'s First.

10

Am. Compl. ¶ 15 ("Upon information and belief, Windstream has not paid Fibervision and/or Nexlink the funds required by their contract.).

Plaintiff's claims against Nexlink for quantum meruit and violation of the Texas Prompt Pay Act fail, as a matter of law, to state claims for which relief can be granted. These defects cannot be cured by permitting Plaintiff to amend its Complaint. Accordingly, the Court will grant Nexlink's Motion to Dismiss, with prejudice.

### C. Windstream Motion to Dismiss Counts III and VI

In Count III, Plaintiff alleges Windstream is liable under a theory of quantum meruit. Plaintiff alleges that Windstream is the owner of the Moran and Macomb job sites. Plaintiffs alleges that Windstream hired Nexlink as the general contractor for these sites, that Nexlink hired Fibervision as a subcontractor, and that Fibervision in turn hired Plaintiff as sub-subcontractor. Plaintiff alleges the construction work it completed has unjustly enriched Windstream.

As discussed above, a contractor who claims a landowner has been unjustly enriched by construction work must plead the landowner's non-payment. As a result, Plaintiff must plead Windstream's non-payment. Plaintiff's Complaint contains the following allegation: "Upon information and belief, Windstream has not paid Fibervision and/or Nexlink the funds required under their contract." Pl.'s First. Am. Compl. ¶ 15. Plaintiff makes no additional factual allegations concerning Nexlink's failure to pay Fibervision. Moreover, the remainder of the allegations of Count III are similarly devoid of factual content. *Id.* ¶¶ 47-53. These allegations are insufficient to survive a motion to dismiss.

Plaintiff's claim for quantum meruit also fails for a second and independent reason, because a plaintiff cannot recover under a theory of quantum meruit if an applicable express contract exists. In the Complaint, Plaintiff states it performed construction work pursuant to a contract with

11

Fibervision. Pl.'s First. Am. Compl. ¶ 10.  Those contractual documents are attached as an exhibit to Plaintiff's Complaint. Pl.'s First. Am. Compl. Ex. A-C. The Court finds this contract governs the work Plaintiff completed in this case. As a result, Plaintiff cannot recover on a theory of quantum meruit.

Finally, in Count VI, Plaintiff alleges Windstream violated the Texas Prompt Pay Act. Plaintiff's claim fails to state a claim for which relief can be granted. Under section § 28.002(a) of that Act, an owner is required to make payment to a contractor. Tex. Prop. Code Ann. § 28.002(a). This section is inapplicable here, because Plaintiff does not qualify as a "contractor" under the Act. *Id.* § 28.001(1) (defining "contractor"); *cf.* § 28.001(6) (defining "subcontractor"). In addition, an owner is obligated to pay a contractor only after receiving "a written payment request." *Id.* § 28.002(a). Plaintiff's complaint contains no allegation it ever submitted a written payment request to Windstream. Instead, Plaintiff alleges only that it submitted payment requests to Fibervision. Pl.'s First. Am. Compl. ¶ 16, 18, 75; *id.* Ex. B; *id.* Ex. C.

Plaintiff's claims against Windstream for quantum meruit and violation of the Texas Prompt Pay Act fail, as a matter of law, to state claims for which relief can be granted. These defects cannot be cured by permitting Plaintiff to amend its Complaint. Accordingly, the Court will grant Windstream's Motion to Dismiss, with prejudice.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** Defendant Blue Bird Media, LLC, a/k/a Blue Bird Networks's Motion to Dismiss Count V or, in the Alternative, for a More Definite Statement, [ECF No. 33], is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Advanced Communications USA, Inc., a/k/a Unitek Global Services, a/k/a Nexlink Communications's Motion to Dismiss Counts III and VI or, in the Alternative, for a More Definite Statement, [ECF No. 40], is **GRANTED.** The claims alleged against Nexlink in Counts III and VI of Plaintiff's First Amended Complaint are **DISMISSED, WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendant Windstream Communications, Inc.'s Motion to Dismiss Counts III and VI, [ECF No. 56], is **GRANTED.** This claims alleged against Windstream in Counts III and VI of Plaintiff's First Amended Complaint are **DISMISSED, WITH PREJUDICE.**

So Ordered this 16th Day of May, 2012.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE