UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MOUNGER CONSTRUCTION, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:11CV00081 ERW |
| ) | |
| FIBER VISION CABLE SERVICES, LLC, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Advanced Communications USA, Inc. a/k/a Unitek Global Services a/k/a Nexlink Communications' ("Nexlink") Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 71].

**I. BACKGROUND**

Plaintiff Mounger Construction, LLC, ("Mounger Construction") filed its Second Amended Complaint in this matter on June 25, 2012, asserting various claims against Nexlink; FiberVision Cable Services, LLC ("FiberVision"); Sparus Corporation; Blue Bird Media, LLC a/k/a Blue Bird Networks ("Blue Bird"); the Hanover Insurance Company; and Windstream Communications ("Windstream").  In this pleading, Mounger Construction claims damages in connection with construction work performed by Mounger Construction at sites in Texas, Oklahoma, and Missouri [ECF No. 68].

In this Second Amended Complaint, Mounger Construction states it performed construction work pursuant to a contract with FiberVision.  Mounger Construction has attached the relevant contractual documents as exhibits to its complaint, incorporating them by reference.

[ECF No. 68-1, Exhibits A & C].  The statements that follow are allegations taken from Plaintiff's Second Amended Complaint, recited here to provide context for the pending motion.

Windstream is the owner of construction projects located in Moran, Texas, and Macomb Oklahoma.  FiberVision was under contract with Nexlink for work performed at Windstream's Texas and Oklahoma construction sites, including the time period between July 13 and August 9, 2011.  FiberVision and Mounger Construction executed a Subcontracting Agreement (the "Contract") on July 5, 2011, in which the parties agreed that Mounger would perform work at the Texas and Oklahoma project sites.

Pursuant to the Contract, Mounger Construction performed worked at these job sites between July 13 and August 9, 2011.  Although Mounger Construction submitted invoices to FiberVision requesting payment, Mounger Construction remains uncompensated for this work.

Blue Bird is the owner of a construction project (the "Project") located in Hannibal, Missouri.  On August 1, 2011, Mounger Construction and FiberVision executed an addendum (the "Addendum") to the Contract, in which the parties agreed that Mounger Construction also would perform work on the Project.  Upon FiberVision's instruction, Mounger Construction moved construction crews and equipment to Hannibal for the purpose of performing that work.

Plaintiff's crews and equipment arrived in Hannibal on August 8, ready to begin work. However, contrary to FiberVision's representations, the Project was not to a point where Mounger Construction could begin its portion of the work to be performed due to numerous reasons, including the need for right-of-way agreements with private landowners that had not been secured, required permits that had not been obtained from the appropriate authorities, a preparatory meeting with the Missouri Department of Transportation that had not taken place, and revised plans for the Project that had not yet received authorization.

In an effort to resolve the issues preventing Mounger Construction from proceeding with its work on the Project on August 8, representatives of Mounger Construction traveled to St. Louis, Missouri, to meet with representatives of Blue Bird and Nexlink on August 10, 2011.  At this meeting, Mounger Construction outlined the issues that prevented the company from commencing its portion of the work to be performed, and was specifically told by a Blue Bird representative to proceed with what work could be accomplished.  Representatives of Nexlink agreed with the Blue Bird representative that the work at Hannibal site was ready to proceed, and indicated that Mounger Construction would be required to display Nexlink's name on the company's trucks while working on the Project.

On August 12, the Blue Bird representative again confirmed that Mounger Construction should proceed with work in Hannibal, that the required signage would be provided in the near future, and that the company should begin working when that signage was provided.  Because the company was unable to begin work on August 8, Mounger Construction incurred substantial shut-down costs.

Although Mounger Construction asserts various claims for relief in its Second Amended Complaint, Count VI, the sole count directed to Nexlink, alleges this defendant is liable under a theory of negligent misrepresentation.

## II.  LEGAL STANDARDS

Negligent misrepresentation claims must comply with Federal Rule of Civil Procedure 8(a), which establishes the general rule of pleading, stating that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *In re NationsMart Corp. Secs. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997); Fed. R. Civ. P. 8(a)(2).  The purpose of this pleading requirement is to "provide fair notice of the plaintiff's claim and

grounds for relief." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).  When the sufficiency of a complaint is questioned, a party may move for dismissal under Rule 12(b)(6), due to the pleading's failure "to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).

A claim has facial plausibility sufficient to survive a motion to dismiss "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The two-step inquiry for resolving such motions suggested in *Iqbal* begins with a court determination as to which of the complaint's allegations contain factual matter that can be accepted as true, and which allegations may be disregarded as conclusory statements, legal conclusions, or threadbare recitals of the action's elements.  *Id.* at 678-79.  After this initial evaluation establishes the existence of well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. Materials attached to the complaint as exhibits may be considered when construing the complaint's sufficiency.  Fed. R. Civ. P. 10(c); *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002).

**II. DISCUSSION**

In its Motion, Nexlink argues that the Second Amended Complaint must be dismissed with prejudice as to Nexlink, because the sole claim against it lacks any factual or legal support. Nexlink claims that the Second Amended Complaint fails to state a cause of action for negligent misrepresentation because it fails to plead a specific representation by Nexlink directed to

4

Mounger Construction. Nexlink further argues that, to the extent the Second Amended Complaint contains allegations of any representations made by Nexlink to the company, Mounger Construction knew those representations to be false when allegedly made, and thus could not justifiably rely upon them. Additionally, Nexlink avers that Mounger Construction does not and cannot establish any damage resulting from alleged Nexlink misrepresentations.

In its Response, Mounger Construction argues that its Second Amended Complaint states a negligent-misrepresentation claim sufficiently enough to survive a motion to dismiss, because it specifically and particularly pleaded that Nexlink representatives agreed with the Blue Bird representative's statement that the Project was ready to proceed [ECF No. 75]. Mounger Construction further asserts that Nexlink's justifiable reliance and proximate cause arguments require the Court to make factual determinations inappropriately based on evidence outside the pleadings.

Nexlink claims that it cannot be responsible for costs and damages, because the meeting during which the alleged misrepresentations were made, occurred on August 10, 2011, two days after Mounger Construction arrived at the site and discovered the issues preventing it from starting work. Mounger Construction asserts that the Nexlink representatives' participation in the meeting shows that they, along with the other defendants attending, were responsible for the Project and for the delays in the Project's readiness to proceed.

Previously, on May 16, 2012, this Court dismissed with prejudice the only two claims Mounger Construction asserted against Nexlink in its First Amended Complaint, one count for quantum meruit and one claim alleging violation of the Texas Prompt Pay Act, Texas Property Code Annotated §28.002 [ECF No. 63]. In its May 16 Memorandum and Order, this Court found, among other things, that the Contract between Mounger Construction and FiberVision

5

governed the work completed, and thus precluded recovery on a theory of quantum meruit. The Court also determined that Mounger Construction was a subcontractor of FiberVision, and that FiberVision was a subcontractor of Nexlink. Accordingly, the Court concluded that the Texas Prompt Pay Act did not require Nexlink to pay Mounger Construction because Nexlink's sole obligation under the Act was to pay its subcontractor, FiberVision. The Act does not impose a duty to pay any parties that a subcontractor may hire. The Court additionally found the First Amended Complaint's factual allegations that were based upon Mounger Construction's mere "information and belief" were insufficient to survive Nexlink's motion to dismiss the two claims brought against it. In place of these counts dismissed with prejudice as to Nexlink, the Second Amended Complaint asserts a claim that Nexlink is liable under a theory of negligent misrepresentation.

Under Missouri law, the elements of a negligent misrepresentation action include: (1) the speaker, in the course of business, or due to some pecuniary interest, supplies information to the hearer; (2) the speaker fails to exercise reasonable care or competence in obtaining or communicating the information; (3) the information was false; (4) the speaker intentionally supplied the information to guide the hearer in a particular business transaction; (5) the hearer relies on the representation's truth; (6) the hearer has a right to rely on the representation; and (7) the hearer is consequently and proximately injured. *M&H Enter. v. Tri-State Delta Chemicals, Inc.*, 35 S.W.3d 899, 904 (Mo. App. S.D. 2001); *Cordry v. Vanderbilt Mortg. & Fin. Inc.*, 445 F.3d 1106, 1111-12 (8th Cir. 2006). Thus, to state a negligent misrepresentation claim against Nexlink, Mounger Construction must plead factual allegations concerning, among other things, a false representation as to the Project's readiness made to Mounger Construction by Nexlink, that

company's reliance on that representation, its right to rely on that representation, and the pecuniary loss resulting from its reliance. *Id.*; *Iqbal*, 556 U.S. at 678.

The Second Amended Complaint's well-pleaded factual allegations include statements that, accepted as true, establish that the Contract and Addendum between Mounger Construction and FiberVision governed the work completed by Mounger Construction; that under the terms of the Addendum, FiberVision instructed Mounger Construction to proceed with work on the Project on August 8, 2011; and that Mounger Construction, in accordance with the Addendum, moved its crews and equipment to the Project and was ready and able to begin work on August 8. These allegations, liberally construed in Mounger Construction's favor, lead to the reasonable inference that Mounger Construction mobilized its crew and equipment pursuant to its contractual obligations to FiberVision and the Project Owner, and in compliance with a directive issued by FiberVision, proceeded with its work on the Project on August 8, 2011.

In an effort to plead factual content showing reliance upon a negligent representation made by Nexlink, Mounger Construction added to its Second Amended Complaint the following allegations not contained in its prior pleadings: "Upon information and belief, Nexlink, in the course of its business, represented to Fiber Vision that the Project was ready to proceed on August 8, 2011" [ECF No. 68, Pl.'s Sec. Am. Comp. ¶ 76], and "[t]hereafter, on August 10, 2011, representatives of Nexlink, Michael Wilson, Tommy Lee, Mario Stefano, and Duane Noel, represented that Mounger Construction could begin work in Hannibal." [*Id.* ¶ 77].

As an initial determination, this Court finds Paragraph 76's allegation that , based "[u]pon [Mounger Construction's] information and belief," Nexlink supplied false information about the Project's readiness to FiberVision, fails to contain factual matter that can be accepted as true. The very language of the statement indicates that it is based on conjecture. That this allegation

7

was not pleaded in the first two complaints makes its basis even more speculative, and lends the impression Mounger Construction is trying to replicate the negligent representation allegations that withstood a motion to dismiss previously urged by Project owner, Blue Bird.  Moreover, even if this allegation were to be accepted as true, it would not allow this Court to draw the reasonable inference that Nexlink intentionally provided information for Mounger Construction's guidance, as it does not aver that the alleged communication was directed to Mounger Construction, but, rather, asserts that it may have been made to FiberVision.

Additionally, the allegation would not permit the reasonable inference that Mounger Construction relied on the alleged misrepresentation, as the allegation's language actually implies that the company lacked awareness of Nexlink's purported communication prior to its decision to move crews and equipment to the Project site in readiness to commence work on August 8, 2011. Nor does the allegation that, during a meeting with Mounger Construction and others on August 10, Nexlink represented that Mounger Construction could begin work on the Project, establish the required reliance, as this communication occurred after Mounger Construction mobilized its crews to perform work on the Project.

Most importantly, however, this Court finds that the allegations of the Second Amended Complaint do not permit the reasonable inference that Mounger Construction justifiably relied on any information supplied to it by Nexlink, or that any such representation proximately caused its pecuniary damage.  By its terms, the Complaint indicates that Mounger Construction's performance was governed by its contract with FiberVision, and that Mounger Construction acted at the direction of FiberVision, not Nexlink. An examination of the Contract and Addendum, which were incorporated to the Complaint by reference, reveals that they imposed performance obligations only upon Mounger Construction, FiberVision, and Blue Bird, as the

8

Project owner. According to the terms of these agreements, only FiberVision or the Project owner had any authority to direct Mounger Construction's performance of work. Significantly, the Contract specifically addresses the time of completion for any work performed by Mounger Construction:

> **Time of Completion.** Completion of the Work within the time alloted herein is of the essence of this Agreement. Subcontractor [Mounger Construction] agrees: (a) to provide, if requested, a schedule for completion of the Work; (b) to provide at the Project site (the "Site") all materials, equipment, laborers and supervision necessary to begin the Work upon Contractor's [FiberVision] order to do so; and (c) *to perform the Work and all parts thereof promptly, diligently and in such proper sequence as Contractor may dictate to assure the efficient and timely performance of the Work.* Fiber Vision Cable Services may upon forty-eight (48) hours prior written notice require Subcontractor to provide additional labor and supervision at the Site. *Fiber Vision Cable Services reserves the right to direct and coordinate the Work and to modify any schedule with respect to the required sequence or duration of the Work or any portion thereof.* [ECF No. 68-1, Exhibit A (italics added)].

The Addendum confirms that Mounger Construction mobilized its crews and equipment at the direction of FiberVision: "This letter is to notify [Fibervision] that [Mounger Construction is] going to proceed with the following work in accordance with (Fiber Vision Cable Services) direction[.] . . . We are scheduled to start the work on August 8th, 2011. In the event you do not desire us to perform this work please notify us immediately." [ECF No. 68-1, Exhibit C].

Nexlink is not a party to the Contract or Addendum, and no reference to Nexlink is contained within either document. Consequently, even under a liberal construction in Mounger Construction's favor, the Second Amended Complaint fails to state a claim against Nexlink upon which relief may be granted. The defect cannot be cured by permitting Mounger Construction to amend its Complaint. Consequently, the Court will grant Nexlink's Motion to Dismiss, with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Advanced Communications USA, Inc. a/k/a Unitek Global Services a/ka Nexlink Communications' Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 71] is hereby **GRANTED**. The claims alleged against Nexlink in Count VI are **DISMISSED, with PREJUDICE**.

Dated this  3rd  day of August, 2012.

_E. Richard Webber_
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE