UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MOUNGER CONSTRUCTION, LLC,        ) | |
|                                              ) | |
|      Plaintiff,                      ) | |
|                                              ) | |
|    vs.                              ) | Case No. 2:11CV00081 ERW |
|                                              ) | |
| FIBERVISION CABLE SERVICES, LLC,   ) | |
| *et al.*,                                                  ) | |
|                                              ) | |
|      Defendants.             ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on Defendant Advanced Communications USA, Inc. a/k/a Unitek Global Services a/k/a Nexlink Communications' ("Nexlink") Motion to Dismiss Fiber Vision's First Amended Cross-Claim [ECF No. 81].

**I.   BACKGROUND**

Plaintiff Mounger Construction, LLC, ("Mounger Construction") filed its Second Amended Complaint in this matter on June 25, 2012, asserting various claims against Nexlink; Fibervision Cable Services, LLC ("Fibervision"); Sparus Corporation[1]; Blue Bird Media, LLC a/k/a Blue Bird Networks ("Blue Bird"); the Hanover Insurance Company; and Windstream Communications ("Windstream").  Mounger Construction claims damages in connection with construction work performed by Mounger Construction at sites in Moran,Texas; Macomb,Oklahoma; and Hannibal, Missouri [ECF No. 68].  Windstream is the owner of the

---

[1]Sparus Corporation is no longer a party in this action.  After Mounger Construction filed a Notice of Voluntary Dismissal of its claims against Sparus Corporation , this Court entered an Order dismissing without prejudice the claims against that defendant on September 25, 2012 [ECF No. 89].

construction projects located in Moran, and Macomb.  Blue Bird is the owner of the Hannibal construction project ("the Hannibal Project").

In its Second Amended Complaint, Mounger Construction states it performed construction work pursuant to a contract with Fibervision, and that Mounger Construction remains uncompensated for its work.  Mounger Construction attaches several documents as exhibits to its complaint, incorporating them by reference. [ECF No. 68-1, Exhibits A & C].

Defendant Fibervision filed a First Amended Cross-Claim against Nexlink on July 17, 2012, asserting three causes of action, based on nonpayment of invoices submitted for work performed by Fibervision pursuant to an agreement between it and Nexlink [ECF No. 80]. Fibervision attaches contractual documents to its cross-claim, and incorporates them by reference.  Fibervision alleges that it provided products and services in accordance with the agreement, and that, after crediting Nexlink with all payments and credits due, Nexlink remains indebted to Fibervision, in the amount of $318,443.69.  Fibervision further states that demand for payment has been made, but that Nexlink refuses to pay.

On August 3, 2012, this Court entered an Order dismissing with prejudice all of Mounger Construction's claims against Nexlink [ECF No. 83].  Consequently, the only claims against Nexlink that remain in this action are those contained in Fibervision's First Amended Cross-Claim.  The statements that follow are allegations taken from Plaintiff's Second Amended Complaint and Defendant Fibervision's First Amended Cross-Claim, recited here to provide context for the pending motion.

On or about December 31, 2010, Fibervision and Nexlink entered into a contract ("Subcontractor Agreement"), wherein Fibervision agreed to provide products and services to Nexlink at various job sites across the country, and Nexlink agreed to pay Fibervision for these

products and services. The Subcontractor Agreement contained a forum selection clause establishing jurisdiction over any dispute arising out of or relating to the parties' relationship to be "solely in the Courts of Pennsylvania having competent jurisdiction, with venue located in the Court of Common Pleas for Montgomery County, Pennsylvania." In addition to other projects, Fibervision was under contract with Nexlink for work performed at Windstream's Texas and Oklahoma construction sites.

On July 5, 2011, Fibervision and Mounger Construction executed a Subcontracting Agreement (the "Contract"), in which the parties agreed that Mounger Construction would perform work on the Moran and Macomb projects. Pursuant to the Contract, Mounger Construction performed worked at these job sites between July 13 and August 9, 2011. Although Mounger Construction submitted invoices to Fibervision requesting payment, Mounger Construction remains uncompensated for this work. Mounger Construction's Second Amended Complaint brings claims against Fibervision for breach of contract and quantum meruit in connection with the Moran and Macomb projects, asserting the cost of the work performed on those projects totals $100,687.34.

On August 1, 2011, Mounger Construction and Fibervision executed an addendum (the "Addendum") to the Contract, in which the parties agreed that Mounger Construction also would perform work on the Hannibal Project. Upon Fibervision's instruction, Mounger Construction moved construction crews and equipment to Hannibal for the purpose of performing that work.

Mounger Construction's crews and equipment arrived in Hannibal on August 8, ready to begin work. However, contrary to Fibervision's representations, the Hannibal Project was not to a point where Mounger Construction could begin its portion of the work to be performed due to numerous reasons, including the need for right-of-way agreements with private landowners that

3

had not been secured, required permits that had not been obtained from the appropriate authorities, a preparatory meeting with the Missouri Department of Transportation that had not taken place, and revised plans for the Hannibal Project that had not yet received authorization.

In an effort to resolve the issues preventing Mounger Construction from proceeding with its work on the Hannibal Project on August 8, representatives of Mounger Construction traveled to St. Louis, Missouri, to meet with representatives of Blue Bird and Nexlink on August 10, 2011.  At this meeting, Mounger Construction outlined the issues that prevented the company from commencing its portion of the work to be performed, and was specifically told by a Blue Bird representative to proceed with what work could be accomplished.  Representatives of Nexlink agreed with the Blue Bird representative that the work at Hannibal site was ready to proceed.

On August 12, the Blue Bird representative again confirmed that Mounger Construction should proceed with work in Hannibal, that the required signage would be provided in the near future, and that the company should begin working when that signage was provided.  Because Mounger Construction was unable to begin work on August 8, Mounger Construction incurred substantial shut-down costs of $11,137.00 daily and $77,959.00 weekly.

Mounger Construction's Second Amended Complaint seeks damages from Fibervision and the remaining defendants, asserting claims for breach of contract (against Fibervision), quantum meruit (against Fibervision), negligent misrepresentation (against Fibervision and Blue Bird), and failure to pay under payment and performance bond (against Hanover).

## II. LEGAL STANDARDS

Nexlink moves to dismiss Fibervision's First Amended Cross-Claim pursuant to Federal Rule of Civil Procedure 12, on the basis of improper venue, and for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(3), (6).

When the sufficiency of a complaint is questioned, a party may move for dismissal under Rule 12(b)(6), due to the pleading's failure "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  In ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).

A claim has facial plausibility sufficient to survive a motion to dismiss "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The two-step inquiry for resolving such motions suggested in *Iqbal* begins with a court determination as to which of the complaint's allegations contain factual matter that can be accepted as true, and which allegations may be disregarded as conclusory statements, legal conclusions, or threadbare recitals of the action's elements.  *Id.* at 678-79.  After this initial evaluation establishes the existence of well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. Materials attached to the complaint as exhibits may be considered when construing the complaint's sufficiency.  Fed. R. Civ. P. 10(c); *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002).

A defendant moving to dismiss under 12(b)(3), must demonstrate that the plaintiff's choice of venue is improper.  Fed. R. Civ. P. 12(b)(3); *Webb Candy, Inc. v. Walmart Stores, Inc.*,

2010 2301461 at * 4 (D. Minn. June 7, 2010).  Generally, the moving party makes its required showing by submitting affidavits or other evidence.  *Webb Candy, Inc.*, 2010 2301461 at *4.

Although the Eighth Circuit has not determined, and courts of appeal are split as to whether dismissal of an action is proper pursuant to Rule 12(b)(3) or Rule 12(b)(6) when it is based on a forum selection clause in a contract, most of the cases decided in district courts in this circuit use Rule 12(b)(3) as the basis.  *See Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 971 n. 2 (8th Cir. 2012); *Webb Candy, Inc.*, 2010 WL 2301461 at *4; *Tockstein v. Spoeneman*, 2007 WL 3352362 (E.D. Mo. Nov. 7, 2007).  In accordance with the majority view, this Court will treat Nexlink's Motion to dismiss for lack of jurisdiction based on the forum selection clause as a motion under Rule 12(b)(3).  *See Tockstein*, 2007 WL 3352362 at *3.  Consequently, the Court may properly consider and rely upon facts outside the pleadings without converting Nexlink's motion into one for summary judgment.  *Id.*  Further, when a motion is brought under Rule 12(b)(3), the Court is not required to accept the pleading as true.  *Id.* at *2.

## II.  DISCUSSION

Fibervision's amended cross-claim asserts three causes of action against Nexlink, all based on nonpayment of invoices submitted for work performed by Fibervision pursuant to the Subcontractor Agreement.  In its Motion, Nexlink argues that the amended cross-claims filed against it by Fibervision must be dismissed with prejudice due to improper venue, contending that the claims are covered by a clear, unambiguous, and bargained-for forum selection clause requiring such claims to be brought in a Pennsylvania court.  Nexlink also contends that Fibervision's pleading must be dismissed because its claims lack any factual or legal support [ECF No. 81].

The Subcontractor Agreement contains the following forum selection clause for the resolution of disputes between Nexlink and Fibervision:

> <u>Venue and Jurisdiction</u>.  In the event any dispute arises out of the terms of this Agreement, including its validity, interpretation or construction, or any dispute arises out of or relates to the relationship between Company and Contractor, such dispute shall be governed by and construed in accordance with the substantive laws of the Commonwealth of Pennsylvania.  Jurisdiction for resolution of any said disputes shall be solely in the Courts of Pennsylvania having competent jurisdiction, with venue located in the Court of Common Pleas for Montgomery County, Pennsylvania.

[ECF No. 74-2 at 12].

In its Response to Nexlink's Motion, Fibervision asserts that the Subcontractor Agreement's forum selection clause should not be enforced because the allegations contained in Fibervision's amended cross-claim arise out of the same construction projects Mounger Construction's Complaint concern, and because requiring Fibervision to litigate disputes arising out of the same occurrences and set of facts in two different jurisdictions would be unjust and unreasonable under the circumstances.  Fibervision alternatively requests, in the event this Court finds the forum selection clause enforceable, that any dismissal be without prejudice, so that Fibervision may "have its fair day in court in the proper venue" [ECF No. 85].

"Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *Union Elec. Co.*, 689 F.3d at 973 (quoting *M.B. Rests. Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999)).  Where such clauses are the result of arm's-length negotiation, the parties opposing their enforcement bear "an especially 'heavy burden of proof' to avoid [their] bargain." *Union Elec. Co.*, 689 F.3d at 973-74 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)).  Generally, a party can avoid enforcement of forum selection clauses by showing that proceeding in the  forum

7

designated by contract would be "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Union Elec. Co.*, 689 F.3d at 974 (quoting *Dominium Austin Partners*, *LLC v. Emerson*, 248 F.3d 720, 727 (8th Cir. 2001)).

Because of the close relationship between substance and procedure in forum selection clause analysis and enforcement, however, consideration must be given to the public policy of the forum state. *Union Elec. Co.*, 689 F.3d at 974. Contractual forum selection clauses should be held unenforceable if their enforcement "contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 15.

Mounger Construction's Second Amended Complaint contains allegations pertaining to construction projects located in Moran, Texas; Macomb, Oklahoma; and Hannibal, Missouri [ECF No. 68]. The Second Amended Complaint asserts causes of action against Fibervision for breach of contract in connection with work performed at all three sites; for quantum meruit for work performed at the Texas and Oklahoma sites; and for negligent misrepresentation in connection with the Missouri project. The Second Amended Complaint's allegations arise out of the contract executed by Mounger Construction and Fibervision on July 5, 2011, and concern work performed pursuant to that contract between July 13 and August 9, 2011.

In its cross-claim pleading, Fibervision alleges that venue is proper in this Court "because a substantial part of the events giving rise to this matter took place in Hannibal, MO as that is the location of a subject construction project implicated herein" [ECF No. 80 at 1]. Fibervision states that its claims are "based solely on nonpayment of invoices incurred as a result of work performed" [ECF No. 85 at 1]. Fibervision attached several documents to its pleading, incorporating them by reference. The attached documents include the Subcontractor Agreement,

8

a statement of account indicating a balance due of $268,443.69, and forty-seven invoices [ECF Nos. 80-1, 80-2]. Examination of the incorporated invoices reveals that most of them (all but eight invoices, which total $3,636.60) pertain to work performed outside the time period Mounger Construction's Second Amended Complaint concerns, and that the invoices charge for work performed for different customers and at different job sites, including locations in Lubbock, Houston, Holliday, Magnolia Ridge, Old Richmond, Yupon, Black Hawk Ridge, Gulf Freeway, and Fort Worth [ECF No. 80-2].

Although Missouri has a strong interest in enforcing its laws concerning disputes arising out of construction projects within its borders, Fibervision has not met its burden of showing that enforcement of the forum selection clause would significantly affect Missouri's interest. None of the invoices appear to concern the Hannibal project, or any Missouri site. Neither Fibervision nor Nexlink are Missouri entities. Fibervision is a Florida limited liability company with its principal place of business in Houston, Texas. Nexlink is a Delaware corporation with an office located in Blue Bell, Pennsylvania. Other than its statement regarding venue, the First Amended Cross-Claim contains no allegations concerning events occurring in Missouri, or showing a relationship among Nexlink, the present litigation, and Missouri. Consequently, this Court finds that Missouri's public policy in favor of litigating Fibervision's claims against Nexlink in Missouri is not sufficient to invalidate the forum selection clause. *See Union Elec.*, 689 F.3d at 974.

Under *Bremen*, forum selection clauses "are prima facie valid" and should be specifically enforced unless the resisting party shows that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching. 407 U.S. at 10, 15. Fibervision has not met its heavy burden of proof so as to avoid enforcement of the bargained-for

clause.  Fibervision does not claim that the clause was the product of fraud of overreaching.  Rather, contending that its claims arise out of the same construction projects as Mounger Construction's Complaint concerns, Fibervision argues that enforcement of the clause would be unreasonable and unjust because it would be required to litigate disputes arising out of the same occurrences and set of facts in two different jurisdictions.  Fibervision claims that enforcing the forum selection clause would result in two parallel cases being simultaneously prosecuted, would require duplicative discovery, and would possibly result in inconsistent outcomes.

   Fibervision's argument is premised upon the assertion that its claims and Mounger Construction's action involve "the same construction project."  However, the allegations contained in the pleadings do not support this contention.  Mounger Construction's Complaint concerns the rights and obligations created under a contract executed by Fibervision and Mounger, and pertains to three construction projects owned by Windstream or Blue Bird.  In contrast, Fibervision's First Amended Cross-Claim alleges a dispute that involves the rights and obligations created by the Subcontractor Agreement, a separate and distinct contract between Fibervision and Nexlink.   The cross-claims asserted by Fibervision arise out of work performed by it pursuant to the Subcontractor Agreement, much of which work occurred at unrelated construction projects at different times, for the benefit of owners unconnected to Mounger Construction's claims.  Consequently, the discovery required by Fibervision's cross-claims will not be duplicative of that which Mounger Construction's action will entail, and prosecution of these matters in different forums will not risk inconsistent results.

    Furthermore, this Court finds that Missouri is not a substantially more convenient place for the trial of Fibervision's claims than the parties' bargained-for state.  Any inconvenience Fibervision might suffer by being forced to litigate its claims in the state of Pennsylvania, as it

agreed to do, were clearly foreseeable at the time Fibervision executed the Subcontractor Agreement.  Absent a showing "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court[,] . . . there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain."  *Bremen*, 407 U.S. at 17, 18.  Consequently, this Court concludes that the forum selection clause should control, and will grant Nexlink's Motion to Dismiss, on the basis of improper venue.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Advanced Communications USA, Inc. a/k/a Unitek Global Services a/k/a Nexlink Communications' ("Nexlink") Motion to Dismiss Fiber Vision's First Amended Cross-Claim [ECF No. 81] is **GRANTED.**  Fibervision's First Amended Cross-Claim is **DISMISSED without prejudice**.

Dated this   9th   day of October, 2012.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE